UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
FELIX DELEON, JR.,

                              Plaintiff,

          -against-

TEAMSTERS LOCAL 802, LLC; GROCERY
HAULERS, INC.; HENRY SADOFSKY; and
LYN M. COLLINS,

                           Defendants.
----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

**MEMORANDUM AND ORDER**

20-CV-24 (RRM) (PK)

      Plaintiff Felix DeLeon, Jr., a truck driver, brings this action against his former employer, defendant Grocery Haulers, Inc. ("GHI"); GHI's Human Resources Manager, Lyn M. Collins; his union, Teamsters Local 802 (the "Local"); and a union steward, Henry Sadofsky, principally alleging that GHI engaged in employment discrimination, violated the Family and Medical Leave Act (the "FMLA"), and violated terms of its collective bargaining agreement with the Local and that the Local violated its duty of fair representation. Before the Court are two motions to dismiss: one filed by GHI and Collins (collectively, the "GHI Defendants") and the other filed by the Local and Sadofsky (collectively, the "Local Defendants"). For the reasons set forth below, defendants' motions to dismiss are granted but DeLeon is granted 30 days' leave to amend his complaint with respect to the FMLA interference and retaliation claims and his claim pursuant to 29 U.S.C. § 1132(a)(1)(A).

## BACKGROUND

      The following facts are drawn from DeLeon's complaint (Doc. No. 1) and are assumed to be true for purposes of the Memorandum and Order. DeLeon is a tan-skinned, Hispanic man,

who was born in Puerto Rico in 1962.  (Compl. at ¶¶ 44–48.)  He is a veteran, having served in

the United States Army.  (*Id.* at 53–54, 58.)  Although DeLeon has "often resided in the City and

State of New York," his parents and sister never left Puerto Rico.  (*Id.* at ¶ 15.)  His father died

there in 2018, (*id.* at ¶ 50), leaving DeLeon's sister to care for their elderly mother, who has

unspecified "serious health conditions," (*id.* at ¶ 51).

Sometime in 2011 or 2012, DeLeon was employed by GHI, a trucking company with

approximately 260 employees.  (*Id.* at ¶¶ 6, 39.)  Although the complaint alleges that GHI is

"located" in Iselin, New Jersey, (*id.* at ¶ 17), the pleading also makes it clear that GHI had

locations in other states, including New York, Pennsylvania, and Connecticut.  DeLeon was

working from a New York location during at least some of his six- to seven-year tenure with

GHI.  (*See id.* at 2d ¶ 19.)[1]

At all times relevant to this action, GHI had a collective bargaining agreement with the

Local (the "CBA"), which governed the terms and conditions of its drivers' employment.  (*Id.* at

¶ 6.)  Under the terms of that CBA, DeLeon was entitled to "up to 12 weeks of Federal family

Medical Leave Benefits," as well as other employee benefits.  (*Id.*)  According to the complaint,

GHI provided, among other things, "a 401k plan, early cash out, loan, IRA plan."  (*Id.* at ¶ 42.)

DeLeon was a member of the Local – which is located in Baldwin, New York – in 2018 and

2019 and, perhaps, at other times prior thereto.  (*Id.* at ¶¶ 6, 40.)

<u>The Incidents</u>

Although the complaint alleges that the claims in this case arise "from incidents during

2016, 2017, 2018, and 2019," (*id.* at ¶ 3), the first incident alleged in the pleadings took place on

---

[1] The first 80 paragraphs of the complaint are numbered consecutively.  However, the eighty-first paragraph is numbered "2," and each paragraph thereafter is consecutively numbered beginning with "3."  Since there are two paragraphs numbered "19," the Court uses the citation "2d ¶ 19" to refer to the second of these paragraphs.

September 15, 2017.  On that date, DeLeon was transporting truckloads of goods from a Greenwich bakery to another location.  (*Id.* at 2d ¶ 14.)  Upon returning to the bakery after delivering the first load of goods, DeLeon learned that the second load was delayed.  (*Id.*)  After waiting in his truck for approximately two and one-half hours, DeLeon and a co-worker, Jose Cruz, went into the "dispatcher office of Greenwich" to ask about the status of the load.  (*Id.*)

In response to his inquiry, the dispatcher, Robert Lee, first looked at DeLeon, then walked out of the office.  (*Id.*)  When he returned, DeLeon repeated the inquiry, explaining that he had been waiting two and one-half hours and was "running out of time" to make the second delivery.  (*Id.*)  Lee responded: "[Y]ou ain't going nowhere."  (*Id.*)  Although the complaint does not allege that Lee used any gestures or epithets, it claims that Lee's "body language and demeanor was racially hostile and aggressive in a threatening way against Plaintiff."  (*Id.*)

Offended, DeLeon asked Lee "what was his problem."  (*Id.*)  After responding, "You don't know me," Lee took a step towards DeLeon and asked what he was "going to do."  (*Id.*)  DeLeon attempted to avoid a confrontation by walking out of the office, but Lee followed him out onto the bakery's loading docks.  (*Id.*)  The complaint does not allege what, if anything, Lee said but asserts that Lee "wanted to physically fight Plaintiff in the bakery grounds based on Plaintiff's race, national origin, age, and color."  (*Id.*)  When DeLeon took a defensive posture, Lee stopped approaching him.  (*Id.*)  Cruz then intervened, enabling DeLeon to return to his truck without further incident.  (*Id.*)  DeLeon immediately reported the incident to the GHI dispatcher, then went home.  (*Id.*)

The next morning, a GHI employee named Jimmy Stapleton telephoned DeLeon to inform him that he was "suspended indifferently [*sic*]."  (*Id.*)  When DeLeon asked why, Stapleton indicated that he had received an email from Lee.  (*Id.*)  Stapleton did not ask for

DeLeon's version of events and did not learn that Cruz was a witness to the incident until after he announced the suspension.  (*Id.*)

DeLeon alleges that Stapleton was "completely racially, national origin, age, and color biased against Plaintiff, and other drivers in the past."  (*Id.*)  However, the only support the complaint offers for this assertion are allegations that Stapleton and "showed racially, national origin, age, and color aggressive behavior towards drivers and argued mostly to minority drivers" and "voiced at Plaintiff" on at least a couple of occasions.  (*Id.*)  The complaint provides an example of an instance in which Stapleton yelled at DeLeon after DeLeon followed up on a request to be transferred to Pennsylvania, saying, "Yeah you get your transfer but you're gonna be in the bottom."  (*Id.* at 2d ¶ 36.)  Although DeLeon alleges that Stapleton's "outburst" made him feel "undignified," the complaint acknowledges that "Stapleton has a history of yelling at his staffers and drivers."  (*Id.*)

The complaint does not allege that DeLeon was actually suspended or for how long.  To the contrary, the pleading implies that Stapleton eventually listened to DeLeon's version of events by stating: "It was because Plaintiff had a witness that Stapleton heard Plaintiff's story." (*Id.* at 2d ¶ 14.)  The complaint also implies that DeLeon complained to Collins, GHI's Human Resources manager, about Lee's "unprofessional and threatening behavior," and sent her written statements authored both by Cruz and DeLeon himself.  (*Id.*)  Collins never responded and Lee "continued to work without and restriction or reprimand for some time."  (*Id.*)

Sometime after this incident, DeLeon requested a transfer to Pennsylvania.  According to the complaint, DeLeon first asked Stapleton for a transfer early in 2018.  (*Id.* at 2d ¶ 36.) Stapleton indicated that it would be possible to transfer to the Lehigh terminal, but DeLeon insisted that he wanted to transfer to GHI's Hazleton, Pennsylvania, location.  (*Id.*)  DeLeon

followed up on this request in July 2018 when he encountered Stapleton at the Bimbo Bakeries loading dock in Lehigh Valley, prompting the outburst described above.  (*Id.*)  A short time after his outburst, Stapleton said he would talk with DeLeon "some other time," but he never did. (*Id.*)

 In mid-November 2018, DeLeon went over Stapleton's head and asked GHI's Chief Executive Officer, Marisol, for a transfer to Hazleton.  (*Id.* at 2d ¶ 17.)  When Marisol inquired as to when he would be ready to start there, DeLeon stated that he would be moving at the end of December and ready to work by mid-January 2019.  (*Id.*)  Noting that DeLeon was "in good standing," Marisol indicated a willingness to accommodate DeLeon's request.  (*Id.*)  But Marisol also said she needed discuss the transfer with GHI's owner.  (*Id.*)

When DeLeon had not received word regarding his transfer by mid-December 2018, DeLeon began telephoning Marisol.  (*Id.* at 2d ¶ 18.)  Marisol told him the owner was aware of his request but was still considering it.  (*Id.*)  On December 17, 2018, Marisol prompted DeLeon to make his request directly to the owner at a company Christmas party.  (*Id.*)  The owner, Mark Jacobson, listened to DeLeon request for a transfer and said he "was going to have it."  (*Id.*) DeLeon told Jacobson that he was going to move to Wilkes-Barre, a 20-minute drive from Hazleton, in late December.  (*Id.*)

Later that month, Jacobson asked DeLeon if he was willing to work out of Pittston, Pennsylvania.  (*Id.*)  DeLeon replied that Pittston would be even better than Hazleton.  (*Id.*) DeLeon did not speak with Jacobson again after this "short conversation."  (*Id.*)  On December 29, 2018, DeLeon moved to Wilkes-Barre.  (*Id.*)  He took the first of his three weeks of vacation to settle into his new apartment.  (*Id.* at 2d ¶ 19.)  However, his transfer had yet to be approved

when his vacation ended on January 6, 2019.  (*Id.*)  As a result, he was forced to commute from Wilkes-Barre to New York.  (*Id.*)

Throughout January and into February, DeLeon kept asking when he would be transferred, only to be told that his New York supervisor, Frank Ursocale, was not ready to move him yet.  (*Id.*)  During the five weeks beginning January 6, 2019, DeLeon called in sick four times:  January 20 and 21, and February 3 and 4.  (*Id.* at 2d ¶ 35.)  The complaint implies that at least some of these sick days were prompted by heavy snow in Wilkes-Barre and the Pocono Mountains which closed roads and made driving dangerous.  (*Id.*)

While driving to work on the morning of February 14, 2019, DeLeon received a call informing him that his sister had died.  (*Id.* at 2d ¶ 21.)  DeLeon continued into New York and, after informing his supervisor of his sister's death, proceeded to work that day.  (*Id.*)  That evening, he told the dispatcher that he would not be working Friday, February 15, 2019.  (*Id.*)  DeLeon had Saturdays and Tuesdays off, (*id.* at 2d ¶ 23), and believed that, under the terms of the CBA, he was entitled to three days' paid bereavement leave, (*id.* at 2d ¶ 22.)

On Monday, February 18, DeLeon travelled to Puerto Rico.  (*Id.* at 2d ¶ 23.)  That same day, Ursocale informed him that he would not be transferred.  (*Id.*)  Neither Ursocale nor any other GHI employee offered any explanation for the denial, which further distressed DeLeon.  (*Id.*)

DeLeon returned to work on Sunday, February 24, leaving his 80-year-old mother alone at her home.  (*Id.*)  In the first week of March, DeLeon told Ursocale that he needed to return to Puerto Rico to care for his mother, who had "serious medical conditions."  (*Id.* at 2d ¶ 24.)  DeLeon asked how much time off he had remaining and Ursocale replied that he had nine days off and one sick day.  (*Id.*)  After Ursocale approved his use of the vacation days, DeLeon flew

back to Puerto Rico on March 10, 2019.  (*Id.*).  He remained there until March 18, 2019, but did not return to work until March 22, 2019.  (*Id.* at 2d ¶¶ 24–25.)

Although the complaint acknowledges that DeLeon's commute was "too difficult," it maintains that DeLeon's "biggest problem" during this period was providing care to his mother, who still did not have access to her late husband's bank accounts, retirement accounts, and Social Security benefits.  (*Id.* at 2d ¶ 25.)  Accordingly, on March 20, 2019, DeLeon called his supervisor to request permission to take a leave of absence.  (*Id.*)  The supervisor referred him to Human Resources, so DeLeon telephoned that department and left a voice mail.  (*Id.*)

The next day, Collins' assistant called DeLeon to ask if he was requesting "family care leave."  (*Id.*)  DeLeon explained that the "leave was important in the medical attention [his] … mother needed," and that he had to "get back and look for someone who could care for" her. (*Id.*)  DeLeon requested "30 days or possibly two months."  (*Id.*)

The following day – Friday, March 22, 2019 – DeLeon commuted three hours through a snowstorm to put in his ten-hour shift.  (*Id.*)  When he arrived at work, his supervisor handed him "a request form that had no heading or information about medical leave of absence under FMLA."  (*Id.*)  Although the piece of paper "did not look official," DeLeon used it to make a written request for 30 days' leave, beginning the following day and ending April 23, 2019.  (*Id.*) The complaint does not allege that this request was ever granted.

DeLeon did not immediately return to Puerto Rico.  The complaint alleges:  "After the week of March 24, 2019, … DeLeon … planned the trip back to Puerto Rico for the following week to provide care for [his] … mom."  (*Id.*).  It is unclear whether DeLeon worked during the period after March 22, 2019.

In late March 2019, DeLeon received his paycheck and discovered that he had not been compensated for some or all the second week he took off.  (*Id.*)  DeLeon called his supervisor to ask why he had not been paid for the week, which he believed was paid vacation time.  (*Id.*)  The supervisor had no answers but referred him to Human Resources.  (*Id.*)  Over the next few weeks, DeLeon called Collins repeatedly and left numerous voice mails.  (*Id.*)  Collins never returned his calls.  (*Id.*)  The complaint characterizes this treatment as "workplace harassment" and "unlawful discrimination … based on race, national origin, age, color, and exercise of medical leave entitlement."  (*Id.*)

During the time period in which he was repeatedly calling Collins, DeLeon was also calling the Local and Sadofsky, his union steward, seeking help and answers.  (*Id.* at 2d ¶ 27.)  DeLeon received no response from Sadofsky or "the higher staff" of the Local.  (*Id.*)  He asserts that this inaction constituted a breach of the duty of fair representation, and was attributable to his race, national origin, age, sex, and color.  (*Id.*)

In early April, DeLeon received a certified letter dated April 2, 2019, notifying him that he had been terminated.  (*Id.* at 2d ¶ 28.)  That letter stated that DeLeon had resigned and that he owed GHI $3,110.69.  (*Id.*)  According to the complaint, DeLeon never resigned but made an "emergency request for a leave of absence on … March 22, 2019," to which he was entitled under the Family and Medical Leave Act ("FMLA") and the CBA.  (*Id.*)  DeLeon alleges that his termination was retaliation for that leave request.  (*Id.* at 2d ¶ 31.)  However, the complaint also alleges that DeLeon's "race, age, national origin, ancestry, and color were determinative" in GHI's decision to terminate him.  (*Id.* at 2d ¶ 30.)

On May 16, 2019 – more than six weeks after he received notice of his termination – DeLeon filed a written grievance with the Local.  (*Id.* at ¶ 26.)  On June 13, 2019, DeLeon filed a

charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the part of both GHI and the Local.  (*Id.*)  On July 17, 2019, the EEOC issued a right-to-sue letter, which DeLeon received on July 20, 2019.  (*Id.* at ¶ 27.)  On July 22, 2019, DeLeon's attorney sent GHI a request for ERISA Plan Documents, but that request was ignored.  (*Id.* at ¶ 29.)

       The Complaint

       DeLeon commenced this action on January 2, 2020.  Although the complaint purports to have 22 causes of action, there are actually only 11 claims because the two or three causes of action are frequently combined into a single, undifferentiated section.  For example, the first two causes of action seek various forms of declaratory relief which are described in a single section entitled: "First and Second Cause of Action: Declaratory Judgment/Declaratory Relief: Title 28 U.S.C. §§ 2201-2202."  In this section, DeLeon seeks a declaration that the grievance procedure set forth in Articles 16 and 17 of the CBA, which provide that grievances must be filed within 5 days, is "a sham, substantially inadequate or substantially unavailable," (*id.* at 2d ¶ 54); in violation of unspecified "federal rights," including statutory provisions protecting veterans from "workplace discrimination based on veteran status," (*id.* at 2d ¶¶ 53, 60); and preempted by federal law.  DeLeon asks that the Court declare that employees have two years to bring actions relating to violations of collective bargaining agreements and three years to bring actions arising from willful violations of the FMLA.  (*Id.* at 2d ¶¶ 56–57.)  In addition, DeLeon asks the Court to declare that he never resigned from his position with GHI and that a member of a labor union has an absolute right to a copy of the CBA between the labor union and the member's employer. (*Id.* at 2d ¶¶ 58–59.)

The third and fourth causes of action are described in a single section which alleges a violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), codified in chapter 43 of Title 38 of the United States Code.  The third cause of action alleges both that Article 16 of the CBA "substantially deprived" DeLeon of rights and benefits to which he entitled under the USERRA, including retention rights, (*id.* at 2d ¶ 65), and that DeLeon was "wrongfully terminated based on veteran status," (*id.* at 2d ¶ 66).  The fourth cause of action alleges that GHI and Collins failed to provide DeLeon with notice of his rights and duties under USERRA, as required by 38 U.S.C. §§ 4323 and 4334, (*Id.* at 2d ¶¶ 58–59.)

The fifth and sixth causes of action are incorporated into a single section which alleges violations of the FMLA.  This section alleges violations of two statutory provisions:  29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]," and 29 U.S.C. § 2615(a)(2), which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."  The Court assumes that the fifth cause of action alleges FMLA interference in violation of 29 U.S.C. § 2615(a)(1), while the sixth cause of action alleges FMLA retaliation in violation of 29 U.S.C. § 2615(a)(2).

The seventh and eighth causes of action are set forth in a single section which alleges only a Title VII wrongful termination claim.  Although two of the paragraphs define "cognitive confirmation bias" and "behavioral confirmation bias," (*id.* at 2d ¶¶ 79–80), the section does not allege facts suggesting that defendants' termination was attributable to either form of bias.

The three-paragraph section containing both the ninth and tenth causes of action also alleges violations of Title VII.  The first of the three paragraphs sets forth the elements a plaintiff

10

must establish to "prevail on a charge of discrimination by reason of harassment creating a hostile work environment." (*Id.* at 2d ¶ 81.)  The second paragraph sets forth the elements of a prima facie case of "unlawful workplace discrimination based on hostile work environment harassment or race harassment." (*Id.* at 2d ¶ 82.)  However, the section does not identify specific facts that purportedly establish a hostile work environment.  Rather, the third paragraph is boilerplate, stating that DeLeon "repeats and re-alleges each and every allegation" set forth above.

The three-paragraph section which alleges the eleventh and twelfth causes of action is similar to the section that precedes it, except that it alleges violations of the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefits Protection Act ("OWBPA").  The first two paragraphs quote the entirety of 29 U.S.C. § 623(a), which lists employer practices prohibited by the ADEA.  The third paragraph contains the same boilerplate as the preceding section, stating that DeLeon "repeats and re-alleges each and every allegation" set forth above.

The thirteenth, fourteenth, fifteenth cause of action are raised in a single section which alleges that the Local, GHI, and Collins violated DeLeon's rights under 42 U.S.C. § 1981.  This section of the complaint alleges that these defendants discriminated against him on the basis of his race, nationality, and color, (*id.* at 2d ¶ 96), and that this discrimination implicated his ability to make and enforce contracts, (*id.* at 2d ¶ 89).  However, the section does not identify a specific contract or allege facts relating to this case.  The penultimate paragraph alleges that "the discriminatory treatment that he received during his encounters with Defendants deprived him of the right to contract on the same terms as White employees," (*id.* at 2d ¶ 101), and the final

11

paragraph of the section alleges that "'markedly hostile' discriminatory conduct affecting the contractual relationship establishes a cause of action under § 1981," (*id.* at 2d ¶ 102).

The sixteenth and seventeenth causes of action allege a "hybrid § 301/fair representation claim," which combines a cause of action against GHI under § 301 of the Labor Management Relations Act ("LMRA") with a cause of action against the Local for breach of the duty of fair representation, implied under the National Labor Relations Act ("NLRA"). DeLeon alleges that GHI, through Collins, violated Articles 10, 11, 14, 16, 17, 23, and 28 of the CBA, (*id.* at 2d ¶ 109), and that the Local and Sadofsky breached the duty of fair representation by refusing to process DeLeon's May 2019 grievance, to return his phone calls, or to do anything to assist DeLeon after his termination, (*id.* at 2d ¶¶ 107–08). However, this section also acknowledges that hybrid claims are subject to a six-month statute of limitations and states that the six-month period began to run on June 13, 2019, when DeLeon filed his EEOC charge. (*Id.* at 2d ¶ 111.)

The eighteenth cause of action is a breach of contract claim, alleging that all four defendants impugned the integrity of the grievance process by violating Articles 10, 11, 14, 16, 17, 23, and 28 of the CBA. (*Id.* at 2d ¶ 115.) The complaint does not describe these Articles and does not attach a copy of the CBA.

The nineteenth cause of action appears to allege that Collins violated sections of the Employee Retirement Income Security Act ("ERISA"). However, this cause of action does little more than quote 29 U.S.C. § 1109(a), which establishes liability for breach of fiduciary duties, and 29 U.S.C. § 1104(a)(1), which defines the "prudent man standard of care." (*Id.* at 2d ¶¶ 116–17.) Although it alleges that Collins "is again liable," the cause of action does not allege that Collins is a fiduciary of a Plan or how she breached her fiduciary duties.

The twentieth, twenty-first, and twenty-second cause of action are set forth in a section which purports to allege unlawful discriminatory practices by all four defendants in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  After a paragraph that "repeats and re-alleges" all prior allegations, (*id.* at 2d ¶ 119), this section alleges that defendants "engaged in an unlawful discriminatory practice against plaintiff because of the Plaintiff's age, race, color, national origin, veteran status, and sex, to refuse to discharge from employment such Plaintiff or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment," (*id.* at 2d ¶ 120).  The section also alleges that each individual defendant is liable under the NYSHRL for aiding and abetting Collins in "making a fake narrative about an imaginary resignation letter."  (*Id.* at 2d ¶ 121.)

The Motions to Dismiss

The GHI Defendants and the Labor Defendants have separately moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Many of the arguments raised in GHI's Memorandum of Law in Support of its Motion to Dismiss ("GHI Memo") (Doc. No. 23-5) are essentially the same as the arguments raised in Labor Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Labor Memo") (Doc. No. 25).  First, all defendants move to dismiss the Title VII claims on the ground that DeLeon has not plausibly alleged that any adverse employment action occurred under circumstances that give rise to an inference of discrimination.  Second, they all argue that the facts alleged in the complaint do not make out a hostile work environment.  Third, all defendants argue that DeLeon has failed to allege any facts suggesting age-based animus, and that DeLeon's own allegations establish a lack of "but-for" causation.  Fourth, both the GI Memo and the Labor Memo argue

that the § 1981 claims fail for failure to allege facts suggesting intentional race-based discrimination.  Fifth, the defendants seek to dismiss the NYSHRL and NYCHRL claims not only on the same grounds set above, but on the ground that DeLeon was not covered by these statutes because he worked in New Jersey, not New York.  Sixth, the defendants seek to dismiss the USERRA claims on the ground that the facts alleged do not suggest that any adverse employment acts were motivated by DeLeon's status as a veteran.

Seventh, all defendants argue that the hybrid §301/duty of fair representation claims set forth in the sixteenth and seventeenth causes of action are time-barred.  The GHI Defendants also argue that the complaint does not adequately allege violations of the CBA.  All defendants also argue that the eighteenth cause of action, alleging breach of the CBA, is duplicative of the sixteenth and seventeenth causes of action.

Since the remaining causes of action are brought against the GHI Defendants alone, only the GHI Memo contains arguments relating to these causes of action.  With respect to the FMLA interference claim (the fifth cause of action), the GHI Defendants argue that DeLeon does not adequately allege that he was entitled to FMLA leave because he did not adequately allege that his mother had a "serious health condition."  With respect to the FMLA retaliation claim (the sixth cause of action), the GHI Defendants assert that DeLeon has not adequately alleged a causal relationship between his termination and his request for FMLA leave.  With respect to the ERISA claim (the nineteenth cause of action), the GHI Defendants argue 1) that DeLeon did not exhaust his administrative remedies, 2) that his fiduciary liability claim pursuant to 29 U.S.C. § 1104(a) is conclusory, and 3) that his claim under 29 U.S.C. § 1104(a) can only be brought on behalf of the Plan and not by DeLeon individually.

DeLeon has responded to these motions by filing two separate memoranda of law:  a memorandum responding to the GHI Defendants' motion, (Doc. No. 21), and a memorandum responding to the Local Defendants' motion, (Doc. No. 22).  The Court will describe the contents of these two memorandum to the extent they are relevant in the discussion below.  However, the Court notes that neither of these memoranda point to facts suggesting discriminatory animus.  To the contrary, they imply that DeLeon will need discovery to unearth these facts.  (*See, e.g.*, Memo in Opp. to GHI Def'ts' Mot. at ¶¶ 29, 31, 91; Memo in Opp. to Local Def'ts' Mot. at ¶¶ 11, 13–15, 32.)

## STANDARD OF REVIEW

The instant motions to dismiss are pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits a party to move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept[ ] all factual allegations in the complaint as true" and "draw[ ] all reasonable inferences in the plaintiff's favor."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).  However, the tenet that all factual allegations contained in the complaint are assumed to be true is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face."  *Lundy*, 711 F.3d at 113 (quoting *Iqbal*, 556

U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  To determine whether a claim is plausible, the court must "draw on its judicial experience and common sense."  *Id.* at 679.  A plaintiff need not show that a defendant's liability is a "probability," but a plaintiff must raise "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In deciding whether to dismiss a complaint under Rule 12(b)(6), a district court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).  "In addition, even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (brackets and emphasis added in *Roth*).  "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

"A necessary prerequisite for taking into account materials extraneous to the complaint 'is that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks and citations omitted).  "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the

plaintiff's complaint stands or falls, but which for some reason … was not attached to the complaint." *Id.* (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

## DISCUSSION

I.     Declaratory Relief

The complaint's first two causes of action are requests for declaratory judgment or declaratory relief. "[I]t is well settled that a request for declaratory … relief is not an independent cause of action." *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 627 (E.D.N.Y. 2018) (citing *KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19–20 (E.D.N.Y. Sept. 25, 2012) (collecting cases)). Moreover, the complaint does not allege or even suggest a legal basis for the declaratory relief which DeLeon seeks. Accordingly, these two "causes of action" are dismissed.

II.     Employment Discrimination Claims

Half of the complaint's 22 causes of action allege violations of various employment discrimination statutes. Two causes of action – the third and fourth – allege discrimination on account of DeLeon's veteran status in violation of USERRA. Four causes of action allege race, sex, color, and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964; the seventh and eighth causes of action appear to allege disparate treatment, while the ninth and tenth causes of action allege hostile work environment. The eleventh and twelfth causes of action allege age discrimination in violation of the ADEA, and the twentieth, twenty-first, and twenty-second causes of action allege discrimination in violation of the NYSHRL and the NYCHRL.

A.  Timeliness

Preliminarily, the Court notes that the Title VII and ADEA claims are untimely.  "In
order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the
claimant's receipt of a right-to-sue letter."  *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525
(2d Cir. 1996).  "While the 90-day rule is not a jurisdictional predicate, 'in the absence of a
recognized equitable consideration, the court cannot extend the limitations period by even one
day.'" *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (quoting
*Rice v. New England Coll.*, 676 F.2d 9, 11 (1st Cir. 1982)).  Thus, a "[f]ailure to bring suit within
the 90-day limitation period is fatal to the claim unless subject to equitable tolling."  *Ko v. JP
Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63 (2d Cir. 2018) (summary order).

"The burden of demonstrating the appropriateness of equitable tolling … lies with the
plaintiff.  *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).  Equitable tolling of the time
limitation is only appropriate in "rare and exceptional circumstances in which a party is
prevented in some extraordinary way from exercising his rights."  *Zerilli-Edelglass v. New York
City Transit Auth.*, 333 F.3d 74, 80 (2d Cir.2003) (internal quotations and citations omitted).
"[T]he Supreme Court has recognized only four situations justifying equitable tolling of Title
VII's time limits: (1) where a claimant receives inadequate notice of the right to sue; (2) where
circumstances justify tolling while a claimant's motion for appointment of counsel is pending;
(3) where the court has led a plaintiff to believe she has done everything required of her; or (4)
where affirmative conduct by the defendant has lulled the plaintiff into inaction."  *Foster v.
Walgreen Co.*, 12 F. Supp. 3d 615, 617–18 (W.D.N.Y. 2014) (quoting *Coffey v. Donahoe*, No.
12-CV-138A, 2013 U.S. Dist. LEXIS 90823, at *12 (W.D.N.Y. Feb. 22, 2013)).

In this case, the complaint specifically alleges that DeLeon received the EEOC's right-to-sue letter on July 20, 2019.  (Compl. at ¶ 27.)  Yet, this action was not commenced until January 2, 2020 – 166 days later.  Accordingly, the Title VII and ADEA actions are untimely unless DeLeon can establish a basis for equitable tolling.  *See Johnson*, 731 F.2d at 146;  *Ko*, 730 F. App'x at 63.

Although DeLeon's opposition papers attempt to establish equitable tolling, he has not established one of the four situations recognized by the Supreme Court.  Rather, DeLeon claims that he is "entitled to equitable tolling as it relates to any defense, including, but not limited to, any statute of limitations because 1) Plaintiff has been diligently asserting Plaintiff's legal rights, 2) Plaintiff's sister died, 3) Plaintiff was responding to the serious health conditions of Plaintiff's mother, 4) Plaintiff's father died, and 5) Plaintiff took the time to exhaust his administrative remedies at the EEOC."  (Memo in Opp. to GHI Def'ts' Mot. at ¶ 22; Memo in Opp. to Local Def'ts' Mot. at ¶ 4.)  The Court disagrees.

First, the fact that DeLeon timely exhausted his administrative remedies before the EEOC does not explain why he missed the 90-day deadline.  The death of his father in 2018 and his sister in February 2019 occurred long before the 90-day deadline expired in October 2019.  To be sure, DeLeon may have been busy caring for his mother during the 90-day period, but the complaint alleges that he had an attorney as of July 22, 2019.  (Compl. at ¶ 26.)  DeLeon does not explain why that attorney could not have acted on his behalf.  Accordingly, DeLeon has not established that he acted diligently to vindicate his rights.  Since he has not met his burden of establishing that equitable tolling is appropriate, the Title VII and ADEA claims are time barred.

B.  <u>Failure to State a Claim</u>

DeLeon's complaint also fails to state a claim under Title VII, the ADEA, the NYSHRL, the NYCHRL, or USERRA.  Claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL are analyzed under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  *See Gallegos v. Tompkins Consol. Area Transit, Inc.*, 785 F. App'x 16, 17 (2d Cir. 2019) (summary order) ("Title VII and ADEA claims are evaluated under the *McDonnell Douglas* framework."); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII).  Claims brought under USERRA are analyzed under the two-step burden-shifting framework approved by the Supreme Court in *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983).  *See Dilfanian v. New York City Dep't of Educ.*, 700 F. App'x 5, 6 (2d Cir. 2017) (summary order) (citing *Gummo v. Vill. of Depew*, 75 F.3d 98, 106 (2d Cir. 1996)).  The first step under either framework, however, requires the plaintiff to establish a prima facie case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802 (first step requires plaintiff  to "carry the initial burden under the statute of establishing a prima facie case of ... discrimination"); *Gummo*, 75 F.3d at 106 (first step of NLRB requires plaintiff to carry "burden of proving a prima facie case of discrimination").

Preliminarily, the Court notes that "an employment discrimination plaintiff need not plead a prima facie case of discrimination[.]"  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (emphasis added).  Rather, "a complaint must allege 'enough facts to state a claim to relief that is plausible on its face,' so as to enable the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged[.]'"  *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *4 (E.D.N.Y. June 19, 2020) (quoting

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014)).  In other words, an employment discrimination complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge[ ] [its] claims ... across the line from conceivable to plausible to proceed." *E.E.O.C.*, 768 F.3d at 254.   However, "the elements of a prima facie case of discrimination provide an outline of what is necessary to render [a plaintiff's] claims for relief plausible." *Robles*, 2020 WL 3403191, at *4 (internal quotations and citations omitted).  Accordingly, "courts consider these elements in determining whether there is sufficient factual matter in the complaint" to state a claim.  *Id.*

Under Title VII, the NYSHRL, and the NYCHRL, a plaintiff establishes a prima facie case of intentional discrimination by showing that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination."  *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (Title VII); see *Spiegel*, 604 F.3d at 80 (NYSHRL & NYCHRL).  An ADEA plaintiff must establish these four elements, but must also "prove … that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor."  *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2020) (internal quotation marks and citation omitted).  And under USERRA, a plaintiff "carries his burden of proving a prima facie case of discrimination by showing … that his protected status was a substantial or motivating factor in the adverse [employment] action." *Dilfanian*, 700 F. App'x at 6 (quoting *Gummo*, 75 F.3d at 106).

A showing of disparate treatment—that is, a showing that the employer treated plaintiff "less favorably than a similarly situated employee outside his protected group"—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case.

21

*Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citing *Graham v. Long Isl. R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.*  Thus, proof of "adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  A plaintiff also cannot establish an inference of discrimination through the following "faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore it must have happened because I am (fill in the blank with the applicable protected categor[ies] )." *Kirkweg v. New York City Dep't of Educ.*, No. 12-CV-2635 (WHP), 2013 WL 1651710, at *4 (S.D.N.Y. Apr. 4, 2013) (quoting *House v. Wackenhut Servs. Inc.*, No. 10-CV-9476 (CM) (FM), 2012 WL 4017334, at *1 (S.D.N.Y. Aug. 20, 2012)) (alteration in *Kirkweg*).

In this case, DeLeon relies primarily on this faulty syllogism to allege an inference of discrimination.  First, the complaint lists all the protected categories into which DeLeon fits.  It alleges that he fits within four categories protected under Title VII by providing his skin color (tan), his race (Hispanic), his gender (male) and his national origin (Puerto Rican).  (Compl. at ¶¶ 44–46, 48.)  Then, it alleges that he was born in 1962 and was 56 years old at the time the complaint was filed – old enough to be protected by the ADEA.  (*Id.* at ¶ 47.)  Finally, it alleges that he is a United States Army veteran, protected by the USERRA.  (*Id.* at ¶¶ 54, 58.)

Next, the complaint lists three series of incidents that occurred at work.  First, the complaint describes a verbal altercation with a bakery dispatcher named Robert Lee which almost resulted in a fight.  (*Id.* at 2d ¶ 14.)  Lee complained to DeLeon's supervisor, Jimmy Stapleton, who then threatened DeLeon with a suspension without asking for DeLeon's version

of events.  (*Id.*)  However, the complaint does not allege that Lee was a GHI employee or that

DeLeon was actually disciplined as a result of this incident.  To the contrary, the complaint

suggests that Lee was a bakery employee who was responsible to producing the load that

DeLeon to deliver and that Stapleton eventually "heard Plaintiff's story" because his co-worker

vouched for him.  (*Id.*)

Second, the complaint describes DeLeon lengthy and ultimately unsuccessful attempt to

be transferred to a GHI facility near Wilkes-Barre, Pennsylvania.  DeLeon first asked for a

transfer in early 2018, but Stapleton, after initially indicating that it would be possible to transfer

elsewhere in Pennsylvania, was unresponsive.  (*Id.* at 2d ¶ 36.)  When DeLeon followed up on

his request during a chance encounter with Stapleton in July 2018, Stapleton initially yelled at

DeLeon, then brushed him off by saying he would talk with DeLeon "some other time."  (*Id.*)  In

mid-November 2018, having not yet heard from Stapleton, asked GHI's CEO for the transfer.

(*Id.* at 2d ¶ 17.)  The CEO indicated a willingness to accommodate DeLeon's request, but said

she needed discuss the transfer with GHI's owner and then failed to do so.  (*Id.*)  About a month

later, at a Christmas party, the CEO prompted DeLeon to make his request directly to the owner

at the company Christmas party.  (*Id.* at 2d ¶ 18.)  The owner initially said DeLeon "was going to

have" the transfer to the Hazleton terminal but, later that month, asked DeLeon if he was willing

to work out of Pittston, Pennsylvania.  (*Id.*)  Although DeLeon replied in the affirmative, he was

never transferred.  After repeatedly telling DeLeon that he was not ready to move him, DeLeon's

direct supervisor, Frank Ursocale, eventually told DeLeon in mid-February 2019 that he would

not be transferred. (*Id.* at 2d ¶¶ 19, 23.)

Third, the complaint describes DeLeon's difficulties with Human Resources.  It alleges

that DeLeon was not compensated for his second week of paid vacation.  (*Id.* at 2d ¶ 25.)  It

further alleges that Human Resources did not grant him FMLA leave to which he was entitled. (*Id.* at 2d ¶ 29.)  Rather, Human Resources falsely stated that DeLeon had resigned and terminated him.  (*Id.* at 2d ¶ 28.)

The complaint claims that these incidents occurred because of DeLeon's race, color, national origin, gender, age, or veteran status.  But the complaint does not assert nonconclusory factual matter sufficient to nudge these claims across the line from conceivable to plausible.  *See E.E.O.C.*, 768 F.3d at 254.  Rather, the pleading speculates that these incidents are attributable to discriminatory animus or one form or another.  For example, although the complaint does not allege Lee's race or that Lee made any gestures or epithets, it claims that Lee's "body language and demeanor was racially hostile," and that Lee "wanted to physically fight Plaintiff in the bakery grounds based on Plaintiff's race, national origin, age, and color."  (*Id.* at 2d ¶ 14.)  It alleges that Stapleton was "completely racially, national origin, age, and color biased" against DeLeon, noting that he had yelled at DeLeon a couple of times, yelled mostly at minority drivers, and exhibited unspecified "racially, national origin, age, and color aggressive behavior" toward those drivers.  (*Id.*)  It implies that Collins did not accommodate his request for FMLA leave because of his "color, race, sex, age, and national origin," but does not describe anything Collins did or said that suggested discriminatory animus.  Finally, the complaint baldly asserts that DeLeon's "race, age, national origin, ancestry, and color were determinative factors" in GHI's decision to terminate him.  (*Id.* at 2d ¶ 30.)

Although the complaint mentions the ways in which other GHI employees were treated, it does not allege that DeLeon himself was treated "less favorably than a similarly situated employee outside his protected group."  Some allegations merely note that other employees shared DeLeon's belief that GHI engaged in discriminatory behavior.  For example, the

24

complaint alleges that an employee named Andrew Bailey filed a charge of discrimination in Connecticut, claiming to have been wrongful discharged on the basis of race and color.  (*Id.* at 2d ¶ 11.)  It does not allege that the charge was found to be meritorious.  The complaint also alleges that some unspecified employees left GHI after "a year or two … because [GHI] had discriminatory policies based on race, national origin, and color."  (*Id.* at 2d ¶ 16.)

Other allegations pertain to disparate treatment of minority drivers under entirely different circumstances.  For example, the complaint alleges that a black driver with 10 years' seniority was disciplined more harshly for an accident than a white driver with 30 years' seniority, even though the latter accident resulted in much more damage to GHI's equipment.  (*Id.* at 2d ¶ 33.)   The complaint also alleges that a white driver with 30 years' seniority was suspended for only two days after he totaled a trailer and left the scene of an accident.  (*Id.* at 2d ¶ 33.)   However, the complaint does not suggest that DeLeon was ever involved in a motor vehicle accident or that he was disciplined for it.

To be sure, the complaint does allege that DeLeon complained to Collins about Lee's behavior and that Lee "continued to work without any restriction or reprimand for some time." (*Id.* at 2d ¶ 14.)  However, even assuming that Lee was white and a GHI employee, the complaint does not allege that Lee was never disciplined or that DeLeon was actually suspended. To the contrary, the complaint only alleges that Lee "continued to work without and restriction or reprimand *for some time*," (*id.*) (emphasis added), and that Stapleton eventually "heard Plaintiff's story" and after Cruz vouched for him.  (*Id.*)  Accordingly, the allegations in the complaint do not make out disparate treatment.

There is nothing to suggest that DeLeon could plead valid employment discrimination claim if granted leave to amend.  First, as noted above, the Title VII and ADEA claims are

untimely.  In addition, the fact that the complaint alleges every conceivable type of discrimination makes it clear that DeLeon has no factual basis for alleging any particular discriminatory animus and is relying solely on the "faulty syllogism" described in *Kirkweg*, 2013 WL 1651710, at *4, and *House*, 2012 WL 4017334, at *1.  Accordingly, it would be futile to grant DeLeon leave to amend these employment discrimination claims.  DeLeon's third, fourth, seventh, eighth, ninth, tenth, eleventh, twelfth, twentieth, twenty-first, and twenty-second cause of action are therefore dismissed.

III.     The § 1981 Claims

DeLeon's thirteenth, fourteenth, and fifteenth causes of action allege claims pursuant to 42 U.S.C. § 1981.  To state a discrimination claim under … § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent.  *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).  "However, a plaintiff cannot state a plausible claim without 'reference to specific statements or individual circumstances that suggest discriminatory treatment.'"  *Shin v. Am. Airline, Inc.*, 726 F. App'x 89, 90 (2d Cir. 2018) (summary order) (quoting *Burgis*, 798 F.3d at 69).  "[C]onclusory allegations of racial discrimination are insufficient."  *Id.*

DeLeon's complaint does not sufficiently allege intentional race discrimination on the part of any party.  Rather, DeLeon relies on the "faulty syllogism" discussed in the preceding section, speculates as to the motives of the defendants, and make conclusory allegations of race discrimination.  Accordingly, DeLeon fails to state claims under § 1981 and his thirteenth, fourteenth, and fifteenth causes of action are dismissed.

26

IV.     The FMLA Causes of Action

The FMLA grants eligible employees the right "to a total of 12 workweeks of leave during any 12-month period ... to care for [a] spouse, or a son, daughter, or parent" who "has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "The term 'eligible employee' means an employee who has been employed ... for at least 12 months by the employer" and "for at least 1,250 hours of service ... during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves … (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health, care provider." 29 U.S.C. § 2611 (11).

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). "[T]hese prohibitions give rise to two distinct types of FMLA claims: interference claims and retaliation claims." *Seitz v. New York*, No. 18-CV-4149 (PKC) (LB), 2019 WL 4805257, at *9 (E.D.N.Y. Sept. 30, 2019) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (*per curiam*)); *see Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017).

A.     FMLA Interference

In a FMLA interference claim, "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 464–65 (S.D.N.Y. 2011). To establish FMLA interference, a plaintiff must show "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer

as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

In urging the Court to dismiss DeLeon's FMLA Interference claim, the GHI Defendants argue that the complaint "fails to allege that he was eligible to take FMLA leave and that [GHI] denied him leave to which he was entitled." (GHI Memo at 16.)  The GHI Defendants fault the complaint for failing to allege facts supporting the conclusory allegation that DeLeon's mother had a "serious health condition," (*id.* at 17), and assert, in a footnote, that the complaint does not adequately allege that DeLeon was an "eligible employee" because it "does not allege that he worked 1,250 hours in the 12 month period proceeding his claim." (GHI Memo at 16 n.13.)  In addition, the GHI Defendants claim that the complaint itself alleges that leave was granted, (*id.* at 16 (citing Complaint at ¶ 104)).

With respect to the third argument, neither paragraph 104 nor any other portion of the complaint alleges that DeLeon was actually granted leave.  To be sure, the complaint alleges that DeLeon believed he was legally entitled up to 12 weeks and completed a request form requesting 30 days' leave.  (Compl. at 2d ¶ 25.)  However, it does not state that he was ever told that this request was granted.  Rather, the pleading alleges that DeLeon was terminated during the 30-day period via a certified letter which stated that he had "resigned" and owed GHI $3,110.69.  (*Id.* at 2d ¶ 28.)  These allegations imply that DeLeon was denied the FMLA leave to which he was entitled.

The first two arguments correctly identify deficiencies in the pleadings.  First, although the complaint specifically alleges that DeLeon's mother has "serious medical conditions,"

(Complaint at ¶ 51), that allegation is entirely conclusory and must be disregarded upon this motion to dismiss.  *See Ashcroft*, 556 U.S. at 678, 679.  Second, even though the complaint specifically alleges that DeLeon worked "at least 1,250 hours … during *a* 12 month period," (*id.* at 2d ¶ 7 (emphasis added)), it does not allege that he worked at least 1,250 hours during the 12-month period preceding the request for FMLA leave.  *See* 29 U.S.C. § 2611(2)(A).

Other allegations in the complaint suggest that DeLeon may be able to cure these deficiencies in the pleading.  First, the complaint alleges that DeLeon is not only able, but "eager," to substantiate the allegations that his mother has a serious medical condition "with medical documentation," (Compl. at ¶ 51).  Second, the complaint implies that DeLeon works five days a week, (*id.* at 2d ¶ 23) (explaining that Saturday and Tuesday were DeLeon's "regular days off"), works 10 hours a day on occasion, (*id.* at 2d ¶ 34), and receives only three weeks of paid vacation per year, (*id.* at 2d ¶ 19).  These facts suggest that DeLeon may work as many as 2,450 hours in a 12-month period – almost twice the number of hours necessary to qualify as an "eligible employee."  Accordingly, although the GHI Defendants' motion to dismiss the fifth cause of action is granted, the Court grants DeLeon leave to amend his FMLA interference claim.

B. <u>FMLA Retaliation</u>

Retaliation claims "involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer."  *Woods*, 864 F.3d at 166 (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).  "To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must demonstrate that: (1) she 'exercised rights protected under the FMLA'; (2) she 'was qualified for [her] position'; (3) she 'suffered an adverse employment action'; and

(4) 'the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.'"  *Greenberg v. State Univ. Hosp.– Downstate Med. Ctr.*, No. 19-CV-3570, 2020 WL 7380245, at *2 (2d Cir. Dec. 16, 2020) (summary order) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).  As with FMLA interference claims, a "threshold issue for … FMLA retaliation claims is whether an employee is eligible under the statute to claim its protections."  *Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020) (summary order).  And as with Title VII retaliation claims, an inference of retaliatory intent can be established through "'very close' temporal proximity" between the exercise of the right and the adverse employment action.  *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012).

In moving to dismiss the FMLA retaliation claim, the GHI Defendants argue that DeLeon has not adequately pled 1) that he is eligible for leave under the FMLA and 2) that his termination occurred under circumstances giving rise to an inference of retaliatory intent.  (GHI Memo at 18–19.)  The second argument is without merit.  While the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010), it has held in the Title VII context that a three-week period between protected activity and termination "is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013).  In this case, the period between DeLeon's leave request and his termination was only 11 days – roughly half the period which was considered sufficiently short in *Zann Kwan*.

The first of these arguments was already addressed in connection the FMLA interference claim. The GHI Defendants are correct in noting that DeLeon has not adequately alleged that his mother had a "serious medical condition," and has not alleged that he was employed for more 1,250 hours in the 12-month period prior to his leave request. As discussed above, other facts alleged in the complaint suggest that DeLeon is likely to be able to cure these defects. Accordingly, DeLeon's FMLA retaliation claim – like his FMLA interference claim – is dismissed with leave to replead.

V.   The Breach of Contract and Hybrid § 301/Fair Representation Claims

DeLeon's sixteenth, seventeenth, and eighteenth causes of action are interrelated and best analyzed together and in reverse order. The eighteenth cause appears to be a state-law contract claim alleging breach of the CBA. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Thus, "[b]reach of contract claims founded directly on rights created by collective-bargaining agreements, or substantially dependent upon analysis of the terms of [such] agreement[s], are completely preempted by Section 301 of the [LMRA] …." *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010) (summary order) (internal quotations and citations omitted); *see also Vera*, 335 F.3d at 114. Accordingly, to the extent the eighteenth cause of action is alleging a state-law contract claim, that claim is preempted.

The Court cannot construe the eighteenth cause of action has alleging a § 301 claim. Where, as in this case, "a CBA contains a binding grievance and arbitration process, an

employee cannot avoid the private dispute resolution mechanism simply by suing her employer in court." *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983)).  In such cases, an employee is ordinarily "required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello*, 462 U.S. at 163 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)).  If the employee exhausts the grievance process, the employee can sue the employer under § 301 in what is sometimes called a "pure § 301 claim." *See Allen v. United Parcel Serv., Inc.*, 988 F. Supp. 2d 293, 298 (E.D.N.Y. 2013).[2]  DeLeon does not allege that he exhausted the grievance process and, therefore, is not advancing a pure § 301 claim.

Even if he or she has not exhausted the grievance process, an employee can sue for violations of the CBA if he or she "can show that the failure to arbitrate or the unsuccessful result in that forum was due to the Union's wrongful conduct, that is, a breach of its duty to represent plaintiff fairly …." *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990).  This sort of claim, "which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim." *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union*, 638, 227 F.3d 29, 33 (2d Cir. 2000).  The sixteenth and seventeenth causes of action allege hybrid § 301/fair representation claims against GHI and the Local.

In this case, both the GHI and the Local Defendants argue, among other things, that the hybrid § 301/fair representation claims against them are time barred.  "In a hybrid section 301/fair representation action, the six-month statute of limitations provided by section 10(b) of

---

[2] That nomenclature may not be correct.  The Second Circuit has stated that "[a] pure § 301 action is a suit brought directly by a union against an employer to enforce the CBA." *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir. 2000).

the … NLRA … governs the claims against both the employer and the union." *King v. New York Tel. Co.*, 785 F.2d 31, 33 (2d Cir. 1986) (citing *DelCostello*, 462 U.S. at 169–71).  "The general rule in this circuit is that a cause of action accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.'"  *Id.* (quoting *Santos v. Dist. Council*, 619 F.2d 963, 968–69 (2d Cir. 1980)).  Since a hybrid § 301/fair representation cause of action does "not exist unless a duty of fair representation ha[s] been breached," the cause of action accrues "no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained." *Id.* at 969.  "The statute of limitations can be tolled until the plaintiff discovers the breach '[w]hen a union's action or inaction rises to the level of fraudulent concealment.'"  *Arnold v. 1199 SEIU*, 420 F. App'x 48, 51 (2d Cir. 2011) (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 69 (2d Cir. 1995)).  "Fraudulent concealment is predicated on a union deliberately misleading the plaintiff about a breach which he failed to discover during the limitations period despite the exercise of due diligence."  *Id.*

    In this case, the complaint itself alleges that DeLeon knew or should have known of the Local's breach of its duty of fair representation on June 13, 2019 – more than six months prior to the commencement of this action.  (Compl. at ¶ 111.)  Although the complaint notes that the Local never notified him about its "grievance/arbitration decision," (*id.* at ¶ 112), it does not allege that the Local deliberately misled DeLeon in any way or imply that the Local's inaction rose to the level of fraudulent concealment.  To the contrary, it alleges that despite the Local's inaction, DeLeon knew or should have known of the breach by June 13, 2019.  Accordingly, the hybrid § 301/fair representation causes of action are time barred and the seventeenth and eighteenth causes of action are dismissed.

VI.     The ERISA Claims

According to its headnote, DeLeon's nineteenth cause of action is brought pursuant to

ERISA § 502, 29 U.S.C. § 1132.  This section authorizes civil suits by plan beneficiaries or

participants under certain circumstances.  Among other things, it authorizes a plan participant to

obtain relief from an administrator who fails to supply requested information, 29 U.S.C. §

1132(a)(1)(A), and to obtain "appropriate relief under Section [409]," 29 U.S.C. § 1109, which

imposes personal liability on fiduciaries who breach their fiduciary duties, 29 U.S.C. §

1132(a)(2).

Although the body of the nineteenth cause of action quotes 29 U.S.C. § 1109, it does not

specifically allege a violation of 29 U.S.C. § 1132(a)(1)(A).  However, the cause of action

"repeats and re-alleges" all other allegations of the complaint, (Compl. at ¶ 118), and paragraph

29 of the complaint alleges as follows:

> On July 22, 2019, Plaintiff's counsel mailed a[n] ERISA Plan Documents Request
> Pursuant to Title 29 USC Section 1024(b)(4) to [GHI], which has been ignored.
> Failure to provide both the SPD and MPD within the 30 day time limit caused
> $100.00 per day penalties under 29 U.S.C. § 1132(c)(1)(b) & 29 CFR 2575.502c-
> 1, which are still accruing … against GHI.

Accordingly, GHI generously construes the nineteenth cause of action as alleging a violation of

29 U.S.C. § 1132(a)(1)(A).

Section 1132(a)(1)(A) provides that "[a] civil action may be brought … by a participant

or beneficiary … for the relief provided for in subsection (c) of this section."  Section 1132(c)

provides in relevant part:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4)
> of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this
> title, or section 1025(a) of this title with respect to a participant or beneficiary, or
> (B) who fails or refuses to comply with a request for any information which such
> administrator is required by this subchapter to furnish to a participant or
> beneficiary (unless such failure or refusal results from matters reasonably beyond

34

the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Since 29 U.S.C. § 1024(b)(4) requires that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description," section 1132(c)(1)(B) "requires an ERISA plan administrator to respond to a request for the production of an SPD within thirty days of the request or else face the imposition of a daily penalty for each day the request goes answered." *Siklos v. Ne. Anesthesia Servs. P.C.*, No. 04-CV-8652 (SCR) (LMS), 2009 WL 10739719, at *14 (S.D.N.Y. Jan. 28, 2009).

DeLeon's complaint does not state a claim under § 1132(a)(1)(A). It does not allege that GHI is a plan administrator, that DeLeon is a participant in that plan, or that the "ERISA Plan Documents Request" mailed by counsel was signed by DeLeon. Moreover, the nineteenth cause of action itself makes no reference to § 1132(a)(1)(A). Although the Court notes that DeLeon is represented, and not pro se, it will nonetheless grant DeLeon permission to amend his complaint to replead this cause of action.

Until this cause of action is amended, the Court cannot adjudicate GHI's administrative exhaustion argument. That argument assumes that this claim relates to the "401k Plan," and urges the Court to "take judicial notice" of provisions of the Plan which mandate the exhaustion of certain administrative remedies. (GHI Memo at 13.) However, since the complaint does not identify what ERISA Plan's documents were requested, the Court cannot consider that the 401k Plan document upon this motion to dismiss. That document is not attached to the complaint or incorporated by reference, and DeLeon did not rely on the terms and effect of that document in drafting the complaint. *See Williams*, 440 F. App'x at 9; *Nicosia*, 834 F.3d at 231.

DeLeon's § 1109 claim is also defective in several respects.  Section 1109(a) provides, in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

However, the complaint does not allege that either GHI or Collins are plan fiduciaries.  Even assuming that they are, the complaint does not explain what these defendants did or failed to do that violated their fiduciary duties.  There are only three paragraph in the "Statement of Claim" portion of the complaint which arguably relate this claim and all are entirely conclusory.  The first paragraph merely alleges that GHI was required to exercise its fiduciary duties in accordance with the prudent man standard of care set forth in ERISA 404(a)(1), 29 U.S.C. § 1104(a)(1), but "never did this."  (Compl. at ¶ 41.)  The second paragraph alleges that GHI "provided a 401k plan, early cash out, loan, and IRA plan to [DeLeon] not solely in the interest or benefit of [DeLeon] but also in the interests of [GHI]."  (*Id.* at ¶ 42.)  The third paragraph merely alleges that GHI "abused its position of trust with [DeLeon].  (*Id.* at ¶ 43.)

Similarly, the three paragraphs comprising the nineteenth cause of action allege no facts whatsoever.  The first two paragraphs quote § 1104(a)(1) and § 1109(a), respectively.  (Compl. at ¶¶ 116–17.)  And the third paragraph states: "Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.  Lyn Collins is once again liable." (*Id.* at ¶ 118.)  Accordingly, the complaint fails to allege a violation of a fiduciary duty.

Even if it did, the Court would have to dismiss this action because it is brought on behalf of DeLeon individually, and not on behalf of the plan.  "Under [ERISA] sections 502(a)(2) and

36

409(a), plan participants may unquestionably bring actions against plan fiduciaries for breaches of fiduciary duty." *Coan v. Kaufman*, 457 F.3d 250, 257 (2d Cir. 2006). But the Supreme Court has stated that such claims may not be made for individual relief; they must be "brought in a representative capacity on behalf of the plan." *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see also Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (concluding that *Russell* "bars plaintiffs from suing under [s]ection 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan"). An action cannot "be brought in a 'representative capacity on behalf of the plan' if the plaintiff does not take any steps to become a bona fide representative of other interested parties." *Coan*, 457 F.3d at 259 (*Russell*, 473 U.S. at 142 n. 9). Since DeLeon has taken no such steps, his claim under ERISA § 409(a), 29 U.S.C. § 1109(a), is dismissed without leave to amend.

**CONCLUSION**

For the reasons set forth above, defendants' motions to dismiss are granted in their entirety. DeLeon is granted 30 days' leave to amend his complaint with respect to the FMLA interference and retaliation claims and his claim pursuant to 29 U.S.C. § 1132(a)(1)(A) only. All other claims are dismissed with prejudice, and defendants Teamsters Local 802 and Henry Sadofsky are dismissed from this action. If DeLeon fails to amend his complaint or request an extension of time to do so within 30 days of the date of this Memorandum and Order, the action will be dismissed without further notice. This matter is recommitted to Magistrate Judge Kuo for pre-trial supervision and for determination of whether a stay of discovery is warranted.

SO ORDERED.

Dated: Brooklyn, New York
      March 29, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge